UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>LILAAHAR BICAL,<br>    Defendant. | **MEMORANDUM AND ORDER**<br>16-CR-555 (LDH) |

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Mr. Bical moves pursuant to Rule 38 of the Federal Rules of Criminal Procedure to stay his sentence pending appeal. (ECF No. 97.) In determining whether to stay the enforcement of a judgment pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *accord United States v. Razzouk*, No. 11-CR-430, 2018 WL 3574868, at *1 (E.D.N.Y. July 25, 2018) (applying factors to Rule 38 motion). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434.

Although Mr. Bical is able to appeal the Court's imposition of a fine, *see United States v. Oladimeji*, 463 F.3d 152, 157 (2d Cir. 2006) (holding that appeal waiver as to term of imprisonment did not bar appeal as to order of restitution), he has not made a strong showing that he is likely to succeed on either of the arguments he intends to raise on appeal: (1) that the Court erroneously imposed a fine above the guideline range or (2) that his prior counsel was ineffective in advising him of legal defenses before he entered his guilty plea. (*See* Mem. Law Supp. Def. Lilaahar Bical's Mot., ECF No. 97-2 ("Mem.") at 3–5.)

*First*, Mr. Bical does not identify any procedural defects in the Court's calculation of the fine, so the Court construes his challenge as one for substantive unreasonableness, which the Second Circuit reviews under a under a deferential abuse-of-discretion standard, *United States v. Zukerman*, 897 F.3d 423, 428 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1262 (2019).  The Second Circuit will only vacate those fines "that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *Id*.  Here, the guideline fine range was $1,000 to $10,000, and the statutory maximum fine was $250,000.  In determining Mr. Bical's fine, the Court considered all relevant factors under U.S.S.G. § 5E1.2(d), and especially the seriousness of the offense, Mr. Bical's ability to pay, the burden of any fine on Mr. Bical and his family, and the costs to the government of any term of probation.  Ultimately, the Court imposed a fine of $55,632, which amounts to double the costs of confining and supervising Mr. Bical (*see* PSR ¶ 85).  *Cf. United States v. Leonard*, 37 F.3d 32, 40 (2d Cir. 1994) (upholding sentencing guidelines' inclusion of costs of supervision as a relevant consideration).  In doing so, the Court was mindful of the Second Circuit's admonition that "[a] fine can only be an effective deterrent if it is painful to pay, and whether a given dollar amount hurts to cough up depends upon the wealth of the person paying it." *Zukerman*, 897 F.3d at 431.  Mr. Bical has a $28 million net worth, including more than $4.5 million in personal bank accounts.  (PSR ¶ 72.)  He has not shown that the fine was unreasonable.

*Second*, Mr. Bical fails to make any showing whatsoever to support his argument that the Court's September 18, 2017 exclusion of lay-opinion testimony on the materiality of his fraudulent statements was erroneous, or that prior counsel was somehow ineffective in advising him of his defenses.  Mr. Bical's argument that he "might not have pled guilty had he known the

2

Court would allow such evidence if he went to trial" is simply bizarre, given the Court's express preclusion of such evidence before trial. (*See* Mem. 5.) And Mr. Bical's suggestion that prior counsel was ineffective in advising him on "the issue of materiality" is nonsensical, given that it was prior counsel who advanced the very materiality argument Mr. Bical intends to raise on appeal. (*See id.*)

Finally, Mr. Bical's arguments regarding irreparable injury are so unfounded as to call his good faith into question. Undoubtedly, Mr. Bical's community confinement will be difficult for him and his family members. However, Mr. Bical's "advancing age and serious health issues" do not pose a risk of irreparable harm. He is 62 years old and an active business owner, by no means a geriatric. And the only current medications he takes are Tylenol and aspirin, undermining his assertion that he is "living with the debilitating effects of a near lethal injury." (*Compare* PSR ¶ 46 *with* Mem. 2.) Perhaps most importantly, Mr. Bical grossly mischaracterizes the effect of the sentence on his relationship with General Motors ("GM"). Mr. Bical's contention that he "faces the prospect of imminent adverse action by GM in the event the Court's *sentence* remains unstayed" is directly contradicted by GM's unambiguous statement that, "[a]s a result of [his] recent felony *conviction*, [he is] no longer eligible" to manage a GM dealership. (*Compare* Mem. 6 *with* ECF No. 97-3 at 3, 4 (emphases added).) Indeed, GM informed Mr. Bical of its decision in January 2018, three months after he pleaded guilty and well before sentencing.[1] (ECF No. 97-3 at 3, 4.) Moreover, in February 2018, in connection with his motion to withdraw his guilty plea, Mr. Bical affirmed, under penalty of perjury, that his prior counsel had falsely represented that he would enter into a "handshake agreement with GM" to

---

[1] Notably, GM's May 20, 2015 policy memorandum—appended to the company's January 5, 2018 letter notifying Mr. Bical that he must divest his interests in his two GM dealerships—provides: "General Motors will not approve any proposed [Dealer Operator, Executive Manager, or Dealer Investor] Candidate who has been convicted of or plead guilty to a felony . . . ." (ECF No. 97-3 at 6.)

3

permit Mr. Bical to "plead guilty and keep [his] business." (ECF No. 83-2 ¶¶ 5-6, 8.) In other words, Mr. Bical was well aware more than a year and a half ago that his guilty plea alone had resulted in the severance of his relationship with GM. His present contention otherwise, in an attempt to avoid even the exceedingly lenient sentence the Court imposed, is disingenuous at best. At worst, it is evidence of a man who does not accept responsibility for his crime and has no qualms about continuing to manipulate facts in his own interest.

## CONCLUSION

For foregoing reasons, Mr. Bical's motion is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      August 20, 2019  LaSHANN DeARCY HALL
                            United States District Judge